IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA MCNEIL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMHAR, INC., | : | No. 15-4959 |
|     Defendant. | : | |

MEMORANDUM

**Schiller, J.**                                                                                                                                            **August 16, 2016**

       Sandra McNeil, an African-American woman, sued her former employer, Comhar, Inc. ("Comhar"), for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA"). McNeil was fired following an internal investigation that found she had verbally abused patients with intellectual and developmental disabilities at the Comhar residential facility where she worked. She denies abusing patients and claims that she was treated worse than similarly situated employees who were white and/or male. Comhar has moved for summary judgment. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.    BACKGROUND**

    **A.    Employment and Termination**

       Comhar is a nonprofit organization that provides mental health services, including residential support, to children and adults with intellectual and developmental disabilities. (Def.'s Statement of Undisputed Facts [Def.'s SOF] ¶ 1.) McNeil worked at Comhar from May 29, 2001, until November 22, 2013. (Def.'s Mem. Supp. Mot. Summ. J. [Def.'s Mem.] Ex. 4

[McNeil Termination Mem.].) During the relevant time period, she served as a direct support professional at a community-based home in Philadelphia called the "York Street Facility." (Def.'s SOF ¶ 6.) In that position, she assisted residents with daily living and escorted them to off-site locations for outings. (*Id.*) In November 2013 she was promoted to be an office technician. (*Id.* at ¶ 7.)

Just weeks later, Michelle Feeney, McNeil's supervisor, received a call from Sarah Taylor, a temporary nurse at the York Street Facility, reporting that certain residents had complained of physical and verbal abuse by staff members. (Def.'s SOF at ¶ 12.) Among the staff members cited were McNeil, Temple Mathis and Guy Harper, all of whom were suspended pending the outcome of an investigation. (*Id.* at ¶¶ 13-14.) McNeil testified that she was accused of both physical and verbal abuse. (*Id.* at ¶ 13.)

After speaking to Taylor, Feeney asked Ronald Ferraro, the director of quality management for Comhar, to launch an investigation, a task Ferraro assigned to Dawn Warren, a state-certified investigator. (*Id.* ¶¶ 16-18.) During the investigation, Warren interviewed residents and staff, including McNeil, and reviewed various documents. (*Id.* at ¶¶ 19-20.) Warren found that McNeil had not physically abused residents. (*Id.* at ¶ 22.) However, Warren found that McNeil had verbally abused at least two residents. (*Id.* at ¶¶ 22-23.) One of those residents told Warren that McNeil "swears a lot at us" and that "she is loud and scary." (Def.'s Mem. Ex. 7 Ex. A [Witness Statement No. 2].) According to the report, McNeil threatened the resident, "I will get you on the outside . . . I warned you I'll f*** you up." (*Id.*) Additionally, two employees reported that McNeil cursed at residents and staff, threatening residents to "sit the f*** down or you all are gonna get a needle." (Def.'s SOF ¶ 24.)

2

Ferraro reviewed Warren's evidence, agreed with her findings, and forwarded the information to management and human resources. (*Id.* at ¶ 25.) Based on these findings, Feeney and two human resources managers, Tonica Lowe-Miller and Barry McLaughlin, decided to terminate McNeil. (*Id.* at ¶ 29.) McNeil's discharge letter states that she was fired for "being verbally abusive to consumers with [m]ental and physical disabilities." (McNeil Termination Mem.)

B.   **Warnings and Prior Disciplinary History**

During McNeil's employment at Comhar, she received and signed a copy of Comhar's compliance handbook. (Def.'s SOF at ¶¶ 9, 30.) She admitted in her deposition that she knew the code of conduct in the compliance handbook prohibited the abuse of residents. (*Id.* at ¶ 9.) Additionally, McNeil received and signed a copy of Comhar's "grounds for discharge" policy, which states that an employee may be terminated for "[a]busive treatment of clients and/or staff." (*Id.* at ¶¶ 30-31; Def.'s Mem. Ex. 4 [Grounds for Discharge].) Indeed, abuse of residents is an immediately dischargeable offense. (*Id.* at ¶ 30.)

McNeil claims that she was "never disciplined," was "never given a warning of any kind," and "never received anything about anger management." (Pl.'s Resp. Def.'s SOF ¶ 10.) However, Comhar has produced evidence that McNeil received multiple warnings and other communications about anger management during her employment. (Def.'s SOF ¶ 10.) On April 13, 2007, McNeil received a written warning from supervisor Nancy Nylund, which stated: "As you well know, you cannot have loud verbally abusive tirades in front of residents and other staff, as has happened a few times recently, most recently this morning. . . . Any future episodes of verbally abusive tirades will lead to further disciplinary action, not excluding termination." (Def.'s Mem. Ex. 4 [Apr. 13, 2007 Mem.].)  Months later, McNeil was placed on disciplinary

probation for three months. (*Id.* Ex. 4 [June 20, 2007 Mem.].) Nylund stated: "In addition to your attendance being an issue, your attitude and verbal behavior are of great concern." (*Id.*) On January 5, 2009, Nylund praised McNeil's progress on anger management in a written performance review: "Sandra has taken great pains to improve her callouts and anger management, with astonishing success on both counts." (*Id.*, Ex. 4 [Jan. 5, 2009 Employee Evaluation].) McNeil signed this document. (*Id.*) However, on January 31, 2009, Nylund again reprimanded McNeil: "I view last week's altercation with your coworker as an aberration, or a very unusual event. . . . [But] [i]t is unfortunate that you both were unable to maintain your professional demeanor(s)." (*Id.*, Ex. 4 [Jan. 31, 2009 Mem.].) McNeil signed this document. (*Id.*) In her deposition, McNeil stated that she does not remember these communications. (*Id.* Ex. 4 [McNeil Dep. at 69, 83].)

### C. Disciplinary Action Against Other Employees

McNeil testified that no one at Comhar had ever made a derogatory statement about her race or gender. (Def.'s SOF ¶ 34.) However, McNeil alleges she was treated unfavorably compared to Harper, a man, and Barbara Clampffer, a white woman. (Pl.'s Mem. at 18.) Harper was suspended at the same time as McNeil, facing allegations of abuse. (Def.'s SOF ¶ 14.) Warren investigated the allegations against Harper and concluded they were "completely unfounded." (Def.'s Mem. Ex. 7 [Warren Decl.] ¶ 18) Harper was allowed to return to work, and he received back pay for the period of his suspension. (Def.'s SOF ¶ 28.)

Clampffer was cited during her annual evaluation for making "one major med[ication] error . . . necessitating the hospitalization of a resident for an overnight observation." (Def.'s Mem. Ex. 9 [Clampffer Review].) Her performance review was otherwise positive and she was

not terminated. (*Id.*) McNeil alleges, however, that Clampffer repeatedly made such errors without disciplinary action. (Pl.'s Mem. at 9.)

Defendant presents evidence that at least two other staff members were fired for being "verbally abusive" to staff and patients. Mathis, who was suspended and investigated at the same time as McNeil, was terminated after admitting that she cursed at residents. (Pl.'s Opp'n Mot. Summ. J. [Pl.'s Mem.] at 7; Def.'s Mem. Ex. 7 Ex. E [Warren Rep.].) Two months later, another employee identified as T.F. was terminated for verbally abusing staff and patients. (Def.'s Reply Ex. 1 [T.F. Termination Mem.])

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.     DISCUSSION**

McNeil's discrimination claim turns on proving: (1) that she was treated unfavorably compared to similarly situated employees who were white and/or male; and (2) that the reason Comhar proffered for firing her—verbal abuse of residents—was a pretext.

Specifically, McNeil alleges discrimination on the basis of race and sex in violation of Title VII and the PHRA. "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Thus, this Court will analyze McNeil's claims under a Title VII framework, and the conclusions will apply equally to her PHRA claims. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000).

McNeil's discrimination claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 270-71 (3d Cir. 2010). A plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to assert a non-discriminatory reason for the adverse employment decision. *Anderson*, 621 F.3d at 271. The defendant need not prove that the non-discriminatory reason was the actual motivation for its action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant provides a non-discriminatory reason, the burden of production shifts back to the plaintiff, who

must then show by a preponderance of the evidence that the employer's reason is merely a pretext for discrimination. *Anderson*, 621 F.3d at 271.

A plaintiff demonstrates pretext by "present[ing] sufficient evidence to raise a genuine issue of fact as to whether the defendant's proffered reasons were not its true reasons for the challenged employment action." *Stewart v. Rutgers*, 120 F.3d 426, 433 (3d Cir. 1997); *see also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999). A plaintiff survives summary judgment by proffering "admissible evidence[] that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason," or by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Jones*, 198 F.3d at 413.

### A.     Plaintiff Fails to Demonstrate a Prima Facie Case of Discrimination

McNeil satisfies the first three prongs of her prima facie case. First, as an African-American woman, she is a member of a protected class. Second, she was qualified for the job based on her experience at the company. Third, she suffered an adverse employment action when she was suspended and later discharged. However, McNeil has produced no evidence from which a reasonable fact finder could infer that her termination resulted from discrimination.

Plaintiffs who allege employment discrimination typically establish the fourth prong of their prima facie case by showing that they were treated unfavorably compared to those outside of the protected class. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003). McNeil's evidence of discrimination here is that she was allegedly treated unfavorably compared to two similarly situated employees, a man named Guy Harper and a white woman named Barbara Clampffer. However, Harper and Clampffer were not similarly situated to McNeil, and

7

therefore are not valid comparators. For an employee to be "similarly situated" in a discrimination case, he or she "should have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct." *See O'Neill v. Sears, Roebuck and Co.*, 108 F. Supp. 2d 433, 439 (E.D. Pa. 2000). Here, neither Harper nor Clampffer engaged in conduct that was remotely on par with McNeil's verbal abuse of residents.

First, an employee wrongly accused of abuse is not a valid comparator to an employee properly accused of abuse. In this case, the investigation determined that the allegations of abuse against Harper were "completely unfounded" and thus he was not fired. (Warren Decl. ¶ 18) McNeil asks the Court to disregard the results of the investigation—by treating Harper as though he had in fact abused residents, or treating McNeil as though she had not abused residents—without presenting any evidence to suggest the investigation was tainted by discriminatory animus.

Second, a nurse who administered the wrong dosage of medication to patients is not a valid comparator to an employee who verbally abused and threatened those patients. Here, Clampffer was cited for a medication error in her annual performance review, but was not fired. Plaintiff's counsel argues that a "jury is to decide whether Clampffer's errors constitute abuse of residents, and if so, how such abuse measures up in comparison to the alleged verbal abuse committed by Plaintiff." (Pl.'s Mem. at 12.) However, courts have frequently granted summary judgment for employers after concluding that plaintiffs' comparators were not similarly situated as a matter of law. *See, e.g.*, *Morrison v. Thomas Jefferson Univ. Hosp.*, Civ. A. No. 10-4365, 2011 WL 4018252, at *5 (E.D. Pa. Sept. 8, 2011); *Thomas v. City of Philadelphia.*, Civ. A. No. 12-3250, 2013 WL 5429230, at *7 (E.D. Pa. Sept. 30, 2013); *Lucchesi v. Day & Zimmerman, Grp.*, Civ. A. No. 10-4164, 2012 WL 5829790, at *7 (E.D. Pa. Nov. 16, 2012). Here, the Court

holds that accidentally administering the wrong medication to a patient is not sufficiently similar to intentionally abusing a patient, and therefore Clampffer is not a valid comparator upon which to base a discrimination claim.

Just as McNeil pins her case on two invalid comparators, she conspicuously ignores two comparators that are more obvious: Mathis and T.F., who were fired for verbally abusing residents within months of McNeil, and who received precisely the same punishment for the same conduct. (Mathis Termination Mem.; T.F. Termination Mem.) When challenged by Defendant, McNeil protests that Mathis is not a valid comparator because Mathis, unlike McNeil, admitted to verbally abusing residents, instead of denying the allegations upfront and being found guilty by an investigation. (Pl.'s Mem. at 7.) However, the conduct is the same, whether or not one pleads guilty. Because McNeil's proffered comparators are invalid, she fails to establish a prima facie case.

### B. Plaintiff Fails to Establish Pretext

Even if McNeil could make out a prima facie case of discrimination, Defendant would still be entitled to summary judgment. Comhar proffers a legitimate, non-discriminatory reason for the decision to terminate McNeil: she verbally abused patients. (McNeil Termination Mem.) Therefore, under the *McDonnell Douglas* framework, McNeil must put forward sufficient evidence such that the trier of fact could reasonably disbelieve Comhar's proffered non-discriminatory reasons or believe that invidious discrimination more likely caused the adverse action. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998). A plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765.

McNeil has failed to come forward with evidence discrediting Comhar's non-discriminatory explanation. Her evidence for pretext relies on the same invalid comparators with which she attempts to establish a prima facie case: "Defendant's articulated reason for terminating Plaintiff is pretextual because, as stated above, Defendant treated other similarly situated employees differently." (Pl.'s Mem. at 17.) Because McNeil's alleged comparators, Harper and Clampffer, are invalid, the treatment of these employees does not serve to establish a pretext.

For additional evidence of pretext, McNeil argues that the underlying allegations that led to her termination were suspiciously inconsistent. Specifically, McNeil claims that Comhar first accused her of physical abuse, then accused her of using profanity at work, and only thereafter accused her of verbally abusing residents, as though they were just "looking for something." (*Id.* at 18.) However, McNeil presents no evidence from which a jury could reasonably infer that Comhar was inconsistent, much less that Comhar was so inconsistent as to suggest pretext. First, the allegations of profanity and verbal abuse are not mutually exclusive. (*See* Def.'s SOF at ¶¶ 22-23.) Second, McNeil's own deposition testimony indicates that Comhar's *official* communications to McNeil were consistent. McNeil states that Feeney informed her by telephone that she was suspended because of various allegations, which Feeney could not discuss at that time. (McNeil Dep. at 83:22-84:1-8.) McNeil admits that she learned the full extent of the allegations, including the allegations of verbal abuse, the moment she sat down with the investigator. (McNeil Dep. at 85:15-18.) Indeed, McNeil's evidence of inconsistency in the underlying allegations seems to stem from the gossip she heard from other staff members—some

of whom were also suspended—who called her on the phone during her absence to find out what was going on. (*Id.* at 84-86.) In between her telephone call with Feeney and her meeting with the investigator, McNeil says she heard "a lot of hearsay" from other staff members about the allegations of physical abuse, but nothing about verbal abuse. (*Id.* at 84-85.) Inconsistent gossip from coworkers is hardly sufficient evidence to allow a jury to find that discrimination was more likely than not a motivating or determinative cause of her termination. *See Jones*, 198 F.3d at 413.

Finally, McNeil has simply not produced admissible evidence from which a jury could conclude that the "articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *See id.* McNeil admits in her deposition that nobody at Comhar ever made a derogatory remark about her race or sex and presents no other evidence to suggest a discriminatory animus. (Def.'s SOF ¶ 34.) Further, she fails to create a genuine issue of material fact regarding Comhar's evidence that she was in fact terminated for verbally abusing residents. Namely, she fails to introduce admissible evidence to dispute that: (1) she was in fact treated the same as similarly situated employees, such as Mathis and T.F.; or (2) she was warned and counseled repeatedly about her anger management problems and outbursts. Therefore, McNeil fails to meet her burden of establishing that the proffered reason for her termination was pretextual.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An order consistent with this Memorandum will be docketed separately.